CHATTANOOGA MEDICINE CO v. THEDFORD et al.

THEDFORD et al. v. CHATTANOOGA MEDICINE CO.

(Circuit Court, N. D. Georgia. November 3, 1893.)

1. TRADE-NAMES—TRANSFER OF RIGHT TO USE ONE'S OWN NAME—CONSTRUCTION.

A contract whereby one parts with the right to use his own name in a certain trade connection will not be extended by the courts any further than the clear terms of the agreement show his intention to do so.

2. SAME.

Where one conveys the exclusive right to the use of his name in connection with "Simmons' Liver Medicine," the grantees are not entitled to protection against him when they have ceased to sell or advertise that medicine, and are using his name in advertising and selling a different medicine. 49 Fed. Rep. 949, reaffirmed.

3. EQUITY PLEADING—CROSS BILL.

Where one claiming the exclusive right under a contract to use the name of another in the sale of patent medicines files a bill against him to enjoin a violation thereof, whereupon the latter files an alleged cross bill to enjoin complainant from making a use of the name not authorized by the contract, this latter bill is not a true cross bill, but an original bill.

In Equity. Bill by the Chattanooga Medicine Company against M. A. Thedford and W. J. Satterfield to enjoin the use of a trade-name. Defendants filed a cross bill asking the same relief. A preliminary injunction was heretofore denied. 49 Fed. Rep. 949. The case is now on first hearing. Decree for defendants on the original bill, and decree dismissing the cross bill.

John L. Hopkins & Sons and J. T. Lupton, for complainant.

N. J. & T. A. Hammond and C. P. Goree, for defendants.

NEWMAN, District Judge. This case has now been heard for final decree on the bill, answer, and evidence. The bill seeks to enjoin the M. A. Thedford Medicine Company, of Rome, Ga., from

the manufacture, advertisement, and sale of what is known as "Thedford's Liver Invigorator." The facts in the case are shown with sufficient fullness in the statement of facts and in the opinion filed by the court on the application for temporary injunction, and reported in 49 Fed. Rep. 949. Much testimony has been taken, and has been heard by the court. The case has also been fully argued, and elaborate briefs submitted, by counsel on both sides; and the court has held the matter up for some time, in order to give it full consideration. The main question in the case is now, as it was at the preliminary hearing, as to the right acquired by Smith, McKnight & Patten under their contract with M. A. Thedford, of date November 26, 1876, and as to the extent to which Thedford parted with the right to use his name in connection with liver medicines, and, consequently, what right remains in him as to such use. This court held on a former hearing that "Thedford only parted with the right to use his name in connection with Dr. Simmons' Liver Medicine." After the sale by Thedford to Patten and his associates, the A. Q. Simmons Liver Medicine Company was organized for the purpose of making, advertising, and selling Dr. A. Q. Simmons' Liver Medicine. This company commenced and continued the business until it was enjoined from using Dr. Simmons' name on its wrappers and advertising matter by a decree of the United States circuit court for the eastern district of Tennessee in a suit by J. H. Zeilin & Co., of Philadelphia, against the Simmons Company. After this injunction, and after the company was compelled to drop the name of Dr. A. Q. Simmons from its literature, the Chattanooga Medicine Company was organized, and became its successor. It then commenced, and is now engaged in, the manufacture of what is called "M. A. Thedford's Original and Only Genuine Liver Medicine or Black Draught," claiming the right to so designate its medicine by reason of the contract with Thedford made in November, 1876. The evidence shows that there were transfers in writing from Smith, McKnight & Patten to the A. Q. Simmons Liver Medicine Company, and from that company to the Chattanooga Medicine Company, and shows, further, that these transfers were destroyed in a fire which occurred at the manufactory of the Chattanooga Medicine Company. Z. C. Patten, who is now president of the Chattanooga Medicine Company, and has been connected with both companies, testifies that all the rights acquired by himself and his associates from Thedford were thus regularly transferred to the A. Q. Simmons Medicine Company, and by it to the Chattanooga Medicine Company. The wrappers, such as were used by the A. Q. Simmons Liver Medicine Company, and a poster used by it, have been put in evidence. They show that the medicine was presented to the public as "Dr. A. Q. Simmons' Original and Only Genuine Vegetable Liver Medicine, Manufactured by the Dr. A. Q. Simmons Liver Medicine Co., Successors to M. A. Thedford & Co." There is, also, on both wrappers and poster, an excellent picture of Dr. A. Q. Simmons, (judging by his photograph, which is in evidence,) and underneath it appear the words, "Trade-Mark, Registered." The evidence shows that this picture was regularly registered as the

trade-mark of the A. Q. Simmons Liver Medicine Company in the proper office at Washington.

Now, this becomes important, in view of a contention as to the construction to be given to the use of the term "trade-mark" in the contract between Thedford and Patten and his associates. It is contended that this term was not used in any technical sense, but that the intention of the parties was rather the transfer of its use as a firm name. Now, even if the intention of the parties was the use of Thedford's name as a trade-mark, in a technical sense, it is urged that the adoption of another trade-mark, and regularly registering and using the same, was an abandonment of any such rights so acquired. It is entirely clear, as was stated in the former opinion in this case, that Thedford sold the right to use his name in connection with Dr. A. Q. Simmons' Liver Medicine, only, and that the contract cannot fairly be extended beyond this. The action of the Simmons Liver Medicine Company in adopting the wrapper just described strongly favors the view that what Patten and his associates were buying was the Simmons Liver Medicine, and the right to advertise it and sell it as such. It further tends to show that Thedford's name was rather an incident to what was acquired than the principal thing conveyed, as counsel for complainant argue. The purpose of the parties to the contract between Thedford and Patten and his associates seems to have been, mainly, on the one hand to part with, and on the other to acquire, the right to manufacture, advertise, and sell Simmons' Liver Medicine, and then to bind Thedford not to engage thereafter in the manufacture of said Simmons' Liver Medicine, under any other name or style, unless he should repurchase the right to do so, and, in addition thereto, to give Patten and his associates the right to continue the use of the name of M. A. Thedford & Co. in their business, as it was then being used. This construction is borne out by the subsequent action of the parties, until, by reason of the decree in the Zeilin Case, they were deprived of the right to the use of Dr. A. Q. Simmons' name in the advertisement and sale of their medicine. This is especially true of the wrapper and poster which have been alluded to.

It is contended on behalf of complainant that the contract referred to "makes a clean sweep of all rights and interests, present and future, that the said Thedford had, or could have had, in this liver medicine, a competing liver medicine, or any other liver medicine, so far as his name is concerned." The court cannot agree with the view that this contract has a meaning so broad. Where an individual parts with a right to the use of his own name in any given connection, the courts should not extend the contract by which he does so beyond its necessary scope. It certainly will not be held that a man has tied himself up so as to prevent the use of his own name any further than the clear terms of the agreement show his intention to do so.

Now, the pleadings and proof show that the Chattanooga Medicine Company has abandoned all pretense, so far as advertisement, wrappers, etc., to the use of Simmons' name, or to the manufacture and sale of Simmons' Liver Medicine, and show that it is only selling.

so far as is material here, a medicine called "M. A. Thedford's Original and Only Genuine Liver Medicine or Black Draught." The Chattanooga Medicine Company claims that Thedford, in manufacturing, advertising, and selling "Thedford's Liver Invigorator," is infringing its rights in the manufacture, advertisement, and sale of the "Black Draught," because of his contract with its predecessors, conveying the use of his name in connection with Dr. A. Q. Simmons' Liver Medicine. To state the proposition is to answer it, if the court construes the contract correctly. Even if the Chattanooga Medicine Company was manufacturing and selling what purported to be the Simmons Liver Medicine, it would be questionable (with the exceptions that will be noted hereafter) whether Thedford and his associates, by what they are now doing, are violating his contract; but, certainly, when complainant has abandoned entirely, so far as representations to the public are concerned, the manufacture and sale of Simmons' Liver Medicine, or, in other words, has ceased entirely to use Thedford's name in the connection which he, by his contract, authorized it to use it, it cannot reasonably be claimed that the present use Thedford is making of his name is such as the court will interfere to prevent.

It seems that the effect of the decree in the Zeilin Case was to leave in the Dr. A. Q. Simmons' Liver Medicine Company the right to make the compound known as the "Simmons Liver Medicine," although its advertisement and sale as such was enjoined; and it is contended that the Chattanooga Medicine Company, as the successor to the Simmons Liver Medicine Company, having this right, Thedford cannot, for this reason, make this compound, notwithstanding the fact that the Chattanooga Medicine Company does not advertise its medicine as such. There is an issue as to whether the M. A. Thedford Company, of Rome, is making, as to ingredients, the compound known as "Simmons' Liver Medicine." Quite a number of witnesses testified on behalf of complainant that the agents and salesmen of Thedford's Rome company have been representing to the public that the medicine they were selling was the same as the Old Dr. Simmons' Liver Medicine; and some testified that it was represented as being the same as the Black Draught made by the Chattanooga Medicine Company. Thedford denies that he gave his salesmen authority to so represent his medicine, and denies that the medicine he is now making is the same, as to ingredients, as the Simmons Liver Medicine. There is no evidence before the court, independently of these statements said to have been made by Thedford's salesmen and Thedford's own evidence, to show what the truth about this really is. The court is not prepared to hold that the emphatic denial by Thedford that the medicine is the same is overcome by the statements made by traveling salesmen anxious to sell medicine, and desiring to represent it in such a way as to make sales. The course of the argument and evidence in the case does not show, however, that it is very important to either party as to what are the ingredients of either medicine. The main controversy is over the right to represent it in particular ways to the public. This seems to be the valuable thing in connection with such medicines,—the

right to give them a particular designation to the trade and the public. One of the counsel for the complainant, in his brief, emphasizes this view of it in this way. He says:

"If his [Thedford's] name was important, it was as a means of identifying the medicine; and it would do just as much or more harm to put it on a different medicine, though a competing medicine, as to put it on the one sold."

The court should have some practical reason for granting the writ of injunction. If the Chattanooga Medicine Company has only the bare right to make the compound known as "Simmons' Liver Medicine," and no right whatever to advertise it and put it on the market as such, what injury can be had from the advertisement and sale of even the Simmons Medicine by another person? Even if Thedford was engaged in representing his medicine to the public as Dr. A. Q. Simmons' Liver Medicine, it is difficult to see wherein any harm would be done to the Chattanooga Medicine Company.

In this connection it is proper to notice complainant's claim of wrongdoing on the part of the Thedford Company, of Rome, as to one feature of the wrapper used by it. On the side of the wrapper used to inclose the box containing "T. L. I." is this expression:

"We make a valuable tonic, formerly made by my grandfather, Dr. A. Q. Simmons, in his lifetime; and is a most excellent tonic for ladies, and for nervousness and general debility of either sex."

On the wrapper in which is contained the bottles of "S. V. T." is the following:

"We make 'T. L. I.,' Thedford's Liver Invigorator, an excellent liver medicine for all diseases that arise from a torpid state of the liver. The only genuine has my likeness and signature on the front of each wrapper."

As to the "S. V. T.," it may be remarked that very little of it seems to have ever been put up, and it is mainly as to the language used on the boxes containing "T. L. I." that the complainant's contention is of any force, which is that the purpose of the Thedford Company in using it is to connect the "T. L. I." with Dr. A. Q. Simmons, thereby giving the public the idea that it is the same medicine as that formerly made by Dr. Simmons. This might be of some force, if the Chattanooga Medicine Company was engaged, in any way, in making the Simmons Medicine, but as has been stated, it is not. The evidence shows that the Chattanooga Company has expended a very large sum of money in advertising the medicine known as "Thedford's Original and Only Genuine Liver Medicine or Black Draught." "Liver Medicine" and "Black Draught" are the words which are displayed in the boldest type on the wrapper. By reason of the Chattanooga Medicine Company's continued use of the wrapper and of this name, and of the extensive advertising which it seems to have given it, it is this which is valuable to it. Certainly, the particular matter now being discussed cannot in any way interfere therewith. If the Chattanooga Medicine Company had the right, and was making Simmons' Medicine, this might be a proper subject of complaint, but, as matters now are, it is deemed immaterial.

After the decision in this case on the application for temporary injunction, what purported to be a cross bill was filed by defendant against complainant, the purpose being to enjoin the original complainant from the use of the name of M. A. Thedford as they are now using it on the wrappers of their medicine, and in advertising, etc. Service was made on the counsel for the Chattanooga Medicine Company residing in this district. A motion was made to dismiss the service on the ground that the pleadings filed as a cross bill did not make a good cross bill, and that, consequently, it was not a case for substituted service. This motion was overruled, the bill retained, and substituted service sustained; the court stating, however, that it would not then determine how far relief could be granted under it. A brief opinion was filed, in disposing of this motion, in which the expression was used that the contract between Thedford and Patten and his associates is the "subject-matter" of the original bill. This is now considered to have been erroneous. While the contract is a prominent feature of the matters set up in the original bill, and of the litigation, it cannot be said to have been the subject-matter of the suit. The proper purpose of a cross bill is to obtain discovery, or to obtain a full determination of a matter already in court. The purpose of the original bill in this case was to determine the right of M. A. Thedford & Co., of Rome, to manufacture, advertise, and sell the medicine known as "T. L. I." In order to determine this, it is not necessary to have any decision or decree as to the right of the Chattanooga Medicine Company to do what it is now doing. It may be true that a determination of the right of the Thedford Medicine Company, of Rome, to carry on its business, involves some consideration of what complainant's rights are as to the use of Thedford's name; but it is not at all necessary, in order that the defendants may have a complete determination of the questions raised against them in the original suit, that their cross bill should be entertained and heard. The supreme court, in the case of Ayres v. Carver, 17 How. 591, states the rule in reference to a cross bill (on page 595) as follows:

"A cross bill is brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill. It is brought either to obtain a discovery of facts, in aid of the defense to the original bill, or to obtain full and complete relief to all parties, as to the matter charged in the original bill. It should not introduce new and distinct matters not embraced in the original bill, as they cannot be properly examined in that suit, but constitute the subject-matter of an original, independent suit. The cross bill is auxiliary to the proceeding in the original suit, and a dependency upon it. It is said by Lord Hardwicke that both the original and cross bill constitute but one suit, so intimately are they connected together. Field v. Schieffelin, 7 Johns. Ch. 252."

This is in line with all the authorities on the subject, and supports the view now taken, that the pleading filed and called a "cross bill" is not good as such, and it will be dismissed, with costs.

There must be a decree on the original bill in favor of defendants, denying the injunction.